UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PUSHEEN CORPORATION, an Illinois corporation, | |
| Plaintiff, | Case No. 1:15-cv-07320 |
| v. | Honorable James B. Zagel, Presiding Judge |
| MAKERWEAR, INC., a Delaware corporation; TARGET CORPORATION, a Minnesota corporation, | Honorable Daniel G. Martin, Magistrate Judge |
| Defendants. | |

## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Pusheen Corporation ("Pusheen") hereby submits its Motion for Preliminary Injunction against Defendants MakerWear, Inc. ("Maker") and Target Corporation ("Target") (collectively, "Defendants"), to enjoin Defendants from creating, marketing, displaying, distributing or selling t-shirts bearing an infringing reproduction or derivative of Pusheen's copyrighted images of the "Pusheen the Cat" character pending final disposition of this matter.

## INTRODUCTION

Pusheen is a small, Illinois-based company whose business is centered around the "Pusheen the Cat" character originally created by Pusheen's president. Because the success of Pusheen's business is tied to its intellectual property rights, Pusheen has carefully selected

licensees that are subject to quality control measures and limited distribution to ensure that "Pusheen the Cat" is introduced to market segments at a pace and a level of quality that Pusheen has determined is most beneficial for the Pusheen brand. But Defendants, with the marketing and sale of their infringing "Pusheen the Cat" t-shirt, have interfered with and disrupted Pusheen's ability to control the use of its copyrighted works, thereby causing significant reputational harm to Pusheen. Therefore, for the reasons stated herein, Pusheen respectfully requests that the Court preliminarily enjoin Defendants from creating, marketing, displaying, distributing or selling the infringing t-shirt pending disposition of this litigation.

## FACTUAL BACKGROUND

### I.      "Pusheen the Cat"

The immensely popular "Pusheen the Cat" character was created by Pusheen's president, Claire Belton, and is based on her family's cat of the same name. (Dkt. #1 ¶ 7; Declaration of Claire Belton in Support of Plaintiff's Motion for Preliminary Injunction ¶ 2.) Since her creation in 2010, "Pusheen the Cat" has developed into a unique character with a distinctive personality, as reflected in the following biographical information from her book, "I Am Pusheen the Cat":

 

(Dkt. #1 ¶ 7; Belton Decl. ¶ 7, Exh. A.)

Hundreds of unique "Pusheen the Cat" images have been created over the years,

depicting the character engaged in a variety of everyday (and not so everyday) activities and in various contexts. (Dkt. #1 ¶¶ 7-8.) Following are just three examples of "Pusheen the Cat" images from the 175+ page book, "I Am Pusheen the Cat":



(Belton Decl. Exh. A; *see also* Dkt. #1 ¶ 8.)

Pusheen registers works embodying the "Pusheen the Cat" character and images with the U.S. Copyright Office, including the aforementioned book (Reg. No. TX 7-881-226), and the "Pusheen the Cat 2015 Wall Calendar" (Reg. No. TX 7-956-574). (Dkt. #1 ¶ 9, Exhs. A-B.)

"Pusheen the Cat" has gained a substantial online fan base both in the United States and internationally, including Pusheen's Tumblr blog with 989,000 followers, a Facebook page with nearly 9 million fans, a Twitter account with 105,000 followers, and an Instagram page with nearly 88,000 followers. (Belton Decl. ¶ 5; *see also* Dkt. #1 ¶ 10.) "Pusheen the Cat" has also received coverage in a variety of media outlets, including InStyle Magazine, Siliconrepublic, Catster, The Daily Dot, and The Guardian. (Dkt. #1 ¶ 11; Belton Decl. ¶ 6.)

Pusheen has developed a variety of "Pusheen the Cat" themed merchandise, including backpacks, plush toys, t-shirts, and other clothing items, which are sold at select online and offline retail locations. (Dkt. #1 ¶ 13.) Pusheen has spent considerable time and resources in creating, developing and marketing the "Pusheen the Cat" character. An integral part of these efforts has been the development of a carefully chosen network of licensees that support and protect the quality and personality of the "Pusheen the Cat" character and works embodying the character. (Dkt. #1 ¶ 14; *see also* Belton Decl. ¶ 10.) In furtherance of that goal, Pusheen has placed certain restrictions and limitations upon these licensees. For example, Pusheen retains

sole and final approval of all product designs and packaging, advertising, and other materials connected with licensed "Pusheen the Cat" merchandise. Pusheen also limits the channels of distribution licensees may use, specifically excluding mass market. (Belton Decl. ¶¶ 11-12.)

## II.     Defendants' Infringing "Pusheen the Cat" T-Shirt

Defendant Maker describes itself as a "curated crowd sourcing" platform that curates designs solicited from users, and turns those designs into various products, including hats, t-shirts, and rucksacks. (Dkt. #1 ¶ 15.) Maker's website touts that its products are "[e]xclusively available at every Target store nationwide." (Dkt. #1 ¶ 16.) Defendant Target is a mass-market retailing company selling a wide range of merchandise both online and offline in its almost 2,000 retail stores in the United States. (Dkt. #1 ¶ 17.)

In late July 2015, Pusheen received emails from fans regarding a "crowd-sourced" t-shirt bearing a "Pusheen the Cat" image that was being sold at Target stores. (Belton Decl. ¶ 13, Exh. B; *see also* Dkt. #1 ¶ 18.) Pusheen later learned that Maker had developed the shirt (shown below) that depicted an image of "Pusheen the Cat" with the backend of the image slightly modified to appear as a taco and including the words "Taco Cat Backward Is Taco Cat."



Pusheen promptly notified both Maker and Target of its infringement claim by letter from counsel dated July 21, 2015. (Declaration of Venkat Balasubramani in Support of Plaintiff's Motion for Preliminary Injunction ¶ 2, Exh. A.) Maker's CEO responded, stating that it was a "mistake" and that he "underst[oo]d [Pusheen's] concern." (Id. ¶ 3, Exh. B.)

**III.    Defendants' Refusal to Cease Selling the Infringing T-Shirt**

Over several weeks, Pusheen's counsel attempted to get Defendants to stop selling and distributing the infringing "Pusheen the Cat" t-shirt. (*See* Balasubramani Decl. ¶¶ 2-6, Exhs. A-E.) While Maker expressed contrition over what it characterized as a "mistake" regarding the design, it was equivocal as to whether it would ask Target to stop selling the shirt. When Pusheen's counsel approached Target about the shirt, it too expressed concern regarding any possible misappropriation of intellectual property, but did not agree to stop selling the shirt. Target implied that it would need Maker's imprimatur to stop selling the t-shirt, and that as of that time, "[Maker] ha[d] not directed Target to remove the shirts from [its] stores." (Id. ¶ 6, Exh. E.) In fact, as of the filing of this motion, Pusheen's counsel has not received assurances from either Maker or Target that efforts were being made to stop selling the shirt or that either of them had any intention of doing so. As of late August, Pusheen continued to receive reports that the t-shirt is still available in Target stores. (Belton Decl. ¶ 13.)

**ARGUMENT**

**I.    The Copyright Act Authorizes Preliminary Relief to Restrain Infringement**

Under the Copyright Act, the Court may grant a preliminary injunction "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). The party seeking an injunction must show that "(1) it has no adequate remedy at law and will suffer irreparable harm if a preliminary injunction is denied; and (2) there is some likelihood of success on the merits of the claim." *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 2903 (2014). Once the moving party makes this showing, the Court considers any irreparable harm that an injunction would cause to the nonmoving party and whether an injunction is in the public interest. *Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 461 (7th Cir. 2000). The Court then assesses these factors on a sliding scale such that "the greater the

likelihood of success on the merits, the less net harm the injunction must prevent in order for preliminary relief to be warranted." *Judge v. Quinn*, 612 F.3d 537, 546 (7th Cir. 2010).

## II.      Pusheen is Highly Likely to Succeed on its Copyright Infringement Claim

Pusheen need only demonstrate that it "has a better than negligible chance of succeeding on the merits." *Washington v. Indiana High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 846 (7th Cir. 1999) (internal quotation marks omitted). Pusheen can readily meet this minimal standard.

Anyone who violates any of the copyright owner's exclusive rights under the Copyright Act—including the right to reproduce, distribute, and prepare derivative works from the copyrighted works—is an infringer of the copyright in the works at issue. 17 U.S.C. §§ 106(1)-(3), 501(a). To establish infringement, Pusheen must demonstrate "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007) (internal quotation marks omitted).

### A.      Pusheen Owns Valid Copyrights in Works Embodying "Pusheen the Cat"

Pusheen's two certificates of registration—for the book "I Am Pusheen the Cat" (Reg. No. TX 7-881-226) and the "Pusheen the Cat 2015 Wall Calendar" (Reg. No. TX 7-956-574) (Dkt. #1 ¶ 9, Exhs. A-B)—are prima facie evidence of the validity of the copyrights in those works and their constituent elements. 17 U.S.C. § 410(c); *see also Spinmaster, Ltd. v. Overbreak LLC*, 404 F. Supp. 2d 1097, 1103 (N.D. Ill. 2005). While this presumption is sufficient to establish ownership, Pusheen also supplies the declaration of the creator of "Pusheen the Cat," who attests that she developed the character, and drew the various iterations of it (including the images contained in Pusheen's copyrighted works). (Belton Decl. ¶ 2.)

### B.      Objective Evidence Shows That the Works at Issue Are Substantially Similar

Copying, the second element of an infringement claim, may be shown by direct evidence but because such evidence "is often hard to come by[,] copying may be inferred where the

defendant had access to the copyrighted work and the accused work is substantially similar to the copyrighted work." *JCW Invs.*, 482 F.3d at 915 (internal quotation marks omitted).

### 1. "Pusheen the Cat" Has a Pervasive Internet Presence

"Broad public display of a product may give rise to an inference of access." *JCW Invs., Inc. v. Novelty, Inc.*, 222 F. Supp. 2d 1030, 1034 (N.D. Ill. 2002).

"Pusheen the Cat" has a substantial online presence, giving her widespread public exposure, including her blog with 989,000 followers, Facebook page with nearly 9 million fans, Twitter account with 105,000 followers, and Instagram page with nearly 88,000 followers. (Belton Decl. ¶ 5; Dkt. #1 ¶ 10.) The copyrighted book, "I Am Pusheen the Cat," and copyrighted 2015 "Pusheen the Cat" calendar, as well as other licensed "Pusheen the Cat" merchandise and apparel, are sold through select online retailers, including Amazon.com. (Belton Decl. ¶ 9.) And "Pusheen the Cat" has received media coverage from a variety of outlets, including InStyle Magazine, Siliconrepublic, The Daily Dot, Catster, and The Guardian. (Dkt. #1 ¶ 11; Belton Decl. ¶ 6.) Based on this widespread online presence, it is reasonable to infer access to Pusheen's copyrighted "Pusheen the Cat" images.

### 2. Ordinary Observers Have Found the Works Substantially Similar

Even if "Pusheen the Cat" did not have a pervasive online presence, proof of access is not essential if, as here, "the two works are so similar as to make it highly probable that the later one is a copy of the earlier one[.]" *JCW Invs.*, 482 F.3d at 915 (internal quotation marks omitted).

The test for determining substantial similarity is based on the perspective of the "ordinary observer" and asks "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible [sic] expression by taking material of substance and value." *Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1011 (7th Cir. 2005) (internal quotation marks

omitted). "This test . . . turns on whether the accused work has captured the total concept and feel of the copyrighted work." *JCW Invs.*, 222 F. Supp. 2d at 1034 (internal quotation marks omitted). Here, the Court need not engage in the thought exercise of determining what a hypothetical "ordinary reasonable person" might conclude because evidence demonstrates that actual such persons believed that Defendants were selling a "Pusheen the Cat" shirt.

For example, fans posted pictures of Defendants' t-shirt to Instagram tagging them with "pusheen" references, including (as shown below) one referring to "pusheen being a taco":



And there are other similar examples of posts reflecting the belief of reasonable, ordinary people that they had purchased a "Pusheen the Cat" t-shirt.[1] (Belton Decl. ¶ 14, Exh. C.)

Additionally, the emails originally alerting Pusheen to Defendants' t-shirt reflected the belief of fans that it pictured "Pusheen the Cat." For example, in a post entitled "Saw fake Pusheen shirt," one fan wrote that she "saw a shirt at Target that had a picture that looked _A

---

[1] Even Maker's CEO appeared to acknowledge the similarity in the images in stating that the issue with the design was a "mistake," that the "image was represented to [Maker] as original content," and that he "underst[oo]d [Pusheen's] concern." (Balasubramani Decl. Exh. B.)

LOT_ like Pusheen as a taco," and later reiterating that "[i]t looks just like Pusheen without stripes." (Belton Decl. Exh. B.)

### 3.      A Visual Comparison Reveals Substantial Similarity

Even ignoring this persuasive evidence, a comparison of the works reveals a substantial similarity, as demonstrated by the following two images of "Pusheen the Cat" from Pusheen's copyrighted book and Defendants' "taco cat" image:



The similarities between the images are readily apparent, particularly with respect to the distinctive facial features of "Pusheen the Cat" (the open, "smiling" mouth, identical spacing of the eyes, mouth and whiskers, and the same number, size, and arc of the whiskers) and her tiny, pointy feet. Although images of cartoon cats generally may contain all of these elements (eyes, mouth, whiskers, etc.), it is the particular expression of those elements by Pusheen in its cartoon "Pusheen the Cat" character that are protected and that Defendants have copied.

And "minor and unimportant differences" between the images does not preclude a finding of substantial similarity because "[e]xact reproduction is not necessary" for infringement. *Spinmaster*, 404 F. Supp. 2d at 1105; *see also JCW Invs.*, 222 F. Supp. 2d at 1035. Thus, small differences—such as the replacement of the backend of "Pusheen the Cat" with a part of a taco— do not detract from the overall substantial similarity, as demonstrated by consumers' belief that

the t-shirt depicted "Pusheen the Cat," likely because Defendants retained the character's distinctive face. This is particularly true because "Pusheen the Cat" has been pictured in a variety of outfits and accessories. (*See, e.g.*, Belton Decl. Exh. A.) Moreover, that Defendants have made small alterations to Pusheen's original copyrighted works simply means they have infringed on Pusheen's exclusive right to create derivative works but does not change the necessary finding of substantial similarity. *See Pickett v. Prince*, 207 F.3d 402, 405 (7th Cir. 2000).

Therefore, Pusheen has shown (1) that it is the owner of valid copyrights in images of "Pusheen the Cat," and (2) that an ordinary, reasonable person would find (and has found) that the image on Defendants' t-shirt is substantially similar to Pusheen's copyrighted "Pusheen the Cat" images. Pusheen has thus proven that it is highly likely to succeed on the merits of its copyright infringement claim.

## III.    Pusheen Will Continue to Suffer Irreparable Reputational Harm and Loss of Goodwill Absent Injunctive Relief

The moving party can demonstrate an entitlement to preliminary injunctive relief by showing that, in the absence of such relief, it will suffer "harm that cannot be prevented or fully rectified by the final judgment after trial." *Roland Mach. Co. v. Dresser Indus., Inc.,* 749 F.2d 380, 386 (7th Cir. 1984). The moving party does not, however, have to prove that an award of damages will be "wholly ineffectual" but rather only that they will be "seriously deficient as a remedy for the harm suffered." *Roland,* 749 F.2d at 386.

### A.    The Reputational Harm and Loss of Control Over the Use of its Copyrighted Works Will Continue to Cause Intangible Injury to Pusheen

Courts in the Seventh Circuit have repeatedly recognized that injury to reputation, goodwill and other similar intangible interests can constitute irreparable harm for which there is no adequate remedy at law. *See, e.g.*, *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002) (concluding that "[b]ecause of the difficulty in assessing the damages associated with a loss of goodwill," the district court properly found that plaintiff lacked an adequate

remedy at law); *see also Roland*, 749 F.2d at 386 (damages may be inadequate in part because the "nature of the plaintiff's loss may make damages very difficult to calculate"). Here, Pusheen has suffered, and will continue to suffer, the type of reputational harm from the loss of control over the use of its copyrighted works that cases have recognized are incalculable and inadequately remedied by monetary damages. *See, e.g.*, *Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010) ("Harm might be irremediable, or irreparable, [because] a loss is difficult to replace or difficult to measure, or that it is a loss that one should not be expected to suffer.").

Pusheen has licensed the "Pusheen the Cat" character to a carefully selected group of licensees to create, market, and sell Pusheen-branded merchandise. But to ensure the creation of products that support and protect the personality of the "Pusheen the Cat" character and works embodying the character, Pusheen has placed certain restrictions and limitations upon these licensees. For example, Pusheen retains sole and final approval of all product designs and packaging, advertising and marketing materials, labels and tags, and other items and materials connected with licensed "Pusheen the Cat" merchandise. (Belton Decl. ¶ 11.) With respect to Defendants' infringing t-shirt, Pusheen of course had no opportunity to approve the image used and indeed would not have given such approval even if it had been sought because the poorly rendered image does not meet its quality standards. (Id. ¶ 16.) Nonetheless, as described above, consumers believed that they were purchasing a "Pusheen the Cat" t-shirt when they bought Defendants' shirt, demonstrating additional harm to Pusheen. *See Salinger*, 607 F.3d at 81 ("In the context of copyright infringement cases, the harm to the plaintiff's property interest has often been characterized as irreparable in light of possible market confusion.").

Pusheen also limits the channels of distribution that licensees may use for "Pusheen the Cat" merchandise. An example of one such limitation involved Target, which, in addition to the infringing shirt at issue in this case, for a time sold an official licensed "Pusheen the Cat" t-shirt

through its smaller online store. But, consistent with Pusheen's decision to keep "Pusheen the Cat" out of the mass market, the licensed "Pusheen the Cat" t-shirt was not sold at Target's offline retail stores. (Belton Decl. ¶¶ 12, 17.) Thus, by injecting their infringing "Pusheen the Cat" t-shirt into the mass market via Target's offline retail stores, Defendants significantly impaired Pusheen's control over the quality of works embodying the "Pusheen the Cat" character and its power to decide which channels of distribution are best suited for those works. (Id. ¶ 17.)

Collectively, all of these harms—a low quality product that consumers believe to be a "Pusheen the Cat" product that is distributed through a channel Pusheen has consciously chosen to avoid—are largely, if not entirely, intangible, incalculable and therefore not adequately remedied by an award of monetary damages upon final judgment.

### B. Any Claim that Defendants Have Ceased or Plan to Cease Sale of the Infringing Shirt Does Not Negate Pusheen's Right to Injunctive Relief

Pusheen would still be entitled to an injunction even if Defendants were to represent that they have ceased marketing and selling the t-shirt, or will cease doing so sometime after the filing of this motion, because "cessation of an unlawful practice doesn't exonerate a defendant, since unless enjoined he might resume infringing." *Flava Works, Inc. v. Gunter*, 689 F.3d 754, 762 (7th Cir. 2012); *see also Vincent v. City Colls. of Chicago*, 485 F.3d 919, 925 (7th Cir. 2007) ("Voluntary cessation of unlawful activity does not moot every request for prospective relief[.]").

## IV. The Balance of Harms Favors Injunctive Relief

### A. Consideration of the Relative Harms Heavily Favors Pusheen

As the foregoing discussion illustrates, on balance, the factors strongly favor granting the preliminary injunctive relief Pusheen requests.

Pusheen has demonstrated that it is highly likely to succeed on the merits of its copyright infringement claim. Given that strong showing, the less the balance of harms must favor Pusheen. *See Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). Nonetheless, that

balance does heavily favor Pusheen. Pusheen has suffered, and will continue to suffer, significant reputational harm, including a loss of control over the use of its copyrighted works, if an injunction is not granted pending final resolution of this matter.

In sharp contrast, there is no apparent harm to Defendants from an injunction. First, Defendants may profess an intent to stop selling the t-shirt at some point after this motion is filed anyway, and therefore issuing an injunction to ensure that this intent is realized would not cause them any harm. *See JCW Invs.*, 222 F. Supp. 2d at 1036 (because defendant claimed to have stopped selling the infringing products it could not "claim any injury that would arise from the proposed injunction"). Second, from all outward appearances, the t-shirt is of little economic importance to Defendants. Thus, because "[i]t is axiomatic that an infringer of copyright cannot complain about the loss of ability to offer its infringing product," there is no indication that Defendants would suffer any harm were an injunction granted. *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012) (internal quotation marks omitted), *cert. denied*, 133 S. Ct. 1585 (2013).

Therefore, because Pusheen has demonstrated a strong likelihood of prevailing on the merits of its copyright infringement claim, that it is likely to suffer irreparable harm to its reputation and goodwill, and that Defendants will likely suffer little, if any, cognizable harm should an injunction issue, the balance of harms tips decidedly in Pusheen's favor.

### B.    The Public Interest Favors Protecting Intellectual Property Rights

"The public is generally interested in upholding intellectual property rights, encouraging creativity and innovation, and rewarding the investment of resources in these pursuits." *Computer Assocs. Int'l v. Quest Software, Inc.*, 333 F. Supp. 2d 688, 701 (N.D. Ill. 2004); *see also Spinmaster*, 404 F. Supp. 2d at 1112. Here, through its creative efforts, Pusheen has built a business based on its intellectual property rights in the "Pusheen the Cat" character. The public interest, therefore, is furthered by protecting and rewarding those efforts. Moreover, "the public

has an interest in preventing confusion about the origin of the products that it buys." *Lakedreams v. Taylor*, 932 F.2d 1103, 1110 (5th Cir. 1991); *see also Ballas v. Tedesco*, 41 F. Supp. 2d 531, 542 (D.N.J. 1999) (recognizing "a substantial public interest in avoiding customer confusion"). As shown above, fans believed they were buying a "Pusheen the Cat" shirt from Defendants, therefore an injunction would benefit the public interest by preventing further such confusion.

Thus, granting an injunction would further the public interest in enforcing copyrights "and preventing the pirating of creative energies and resources that are invested in protected works." *Value Grp., Inc. v. Mendham Lake Estates, L.P.*, 800 F. Supp. 1228, 1234 (D.N.J. 1992).

## V.     No Bond Should be Required Given Pusheen's Strong Showing

Under FED. R. CIV. P. 65(c), when issuing a preliminary injunction, the Court must require security "in an amount that [it] considers proper[.]" But, "[u]nder appropriate circumstances bond may be excused, [notwithstanding] the literal language of Rule 65(c)." *Wayne Chem., Inc. v. Columbus Agency Serv. Corp.*, 567 F.2d 692, 701 (7th Cir. 1977); *see also Scherr v. Volpe*, 466 F.2d 1027, 1035 (7th Cir. 1972) (court has discretion as to both the amount of the security and the requirement of security in the first instance).

Here, the respective financial positions of the parties and, as discussed above, the sharply skewed balance of harms that favors granting injunctive relief, support requiring no bond as security for the requested preliminary injunction. In contrast to Defendants, Pusheen is a small company with limited resources formed by the creative forces behind the "Pusheen the Cat" character. Pusheen's business depends on the value of its intellectual property and Pusheen is forced to constantly battle infringements in order to protect its ability to continue its business. To require a bond would put a severe strain on Pusheen's resources that would only magnify the harm caused to Pusheen by Defendants' infringing activity.

Defendants, in contrast, would suffer minimal, if any, harm if it were later determined

that a preliminary injunction was somehow entered in error. Indeed, if, as Defendants may claim, they intend to cease selling the t-shirt anyway at some point after the filing of this motion, there would be no potential damages for a bond to secure.

Given Pusheen's strong showing that it is likely to succeed on the merits, a balance of harms that heavily favors Pusheen, and the parties' widely divergent financial positions, Pusheen respectfully requests that the Court exercise its discretion and forego the requirement of a bond.

## CONCLUSION

For the reasons discussed herein, Pusheen demonstrated that there is a strong likelihood that it will prevail on its copyright infringement claim and that, absent injunctive relief, it will continue to suffer significant irreparable and incalculable reputational harm and loss of goodwill from Defendants' unauthorized appropriation of Pusheen's copyrighted works. Additionally, given this strong showing by Pusheen and Defendants' inability to demonstrate significant harm that is likely to occur to them if an injunction is granted, the balance of harms weighs heavily in Pusheen's favor. Therefore, Pusheen respectfully requests that the Court grant its motion and enjoin Defendants from creating, marketing, displaying, distributing or selling the infringing t-shirt during the pendency of this action.

Dated this 14th day of September, 2015.

Respectfully Submitted,

DELANEY LAW                                     FOCAL PLLC

/s/ William J. Delaney_____              /s/ Stacia N. Lay_____
/s/ Cynthia M. Rote_____               /s/ Venkat Balasubramani_____
William J. Delaney                              Stacia N. Lay, WSBA #30594
Cynthia M. Rote                                 Venkat Balasubramani, WSBA #28269
444 North Wabash Ave., Third Floor              800 Fifth Avenue, Suite 4100
Chicago, Illinois 60611                         Seattle, Washington 98104
Tel: (312) 276-0263                             Tel: (206) 529-4827
Fax: (312) 873-4465                             Fax: (206) 260-3966
Email: bill@delaney-law.com                     Email: venkat@focallaw.com
Email: cindy@delaney-law.com                    Email: stacia@focallaw.com

*Pro hac vice motions filed*

Attorneys for Plaintiff Pusheen Corp.